# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| NICK LOEB, HUMAN EMBRYO #3 HB-A, AND HUMAN EMBRYO #4 HB-A | CIVIL ACTION |
| VERSUS | NO. 18-3165 |
| SOFIA VERGARA | SECTION "S" (1) |

## ORDER AND REASONS

**IT IS HEREBY ORDERED** that Plaintiffs' Motion to Remand (Doc. #12) is **GRANTED**, and this matter is **REMANDED** to the 25th Judicial District Court, Parish of Plaquemines, State of Louisiana.

**IT IS FURTHER ORDERED** that Defendant's Motions to Dismiss the Complaint and Amended Complaint (Docs. #5 & 30) are **DISMISSED** as moot.

## BACKGROUND

This matter is before the court on plaintiffs' motion to remand this matter to the 25th Judicial District Court, Parish of Plaquemines, State of Louisiana for lack of subject matter jurisdiction. Plaintiffs, Nick Loeb, Human Embryo #3 HB-A and Human Embryo #4 HB-A, argue that a federal district court does not have subject matter jurisdiction over this custody dispute. It is also before the court on two motions to dismiss filed by defendant, Sofia Vergara, who argues that this matter must be dismissed because plaintiffs failed to state a claim, she is not subject to personal jurisdiction in Louisiana, this is a court of improper venue, and plaintiffs failed to join all necessary parties.

Sofia Vergara, a citizen of California, is an actress and model. On January 17, 2010, Vergara met Nicholas Loeb in West Hollywood, California, and the two embarked on a romantic relationship. At the time, Loeb was a citizen of Florida, who also had an apartment in New York

City. On July 10, 2012, while they were in Mexico, Vergara and Loeb became engaged to be married.

In early 2013, Vergara and Loeb contracted with ART Reproductive Center, Inc. in Beverly Hills, California to undergo in vitro fertilization ("IVF") in an attempt to create biological children who would be carried to term by a gestational surrogate. Vergara and Loeb underwent the IVF process, which resulted in several embryos. After genetic testing was performed on the embryos, it was determined that only two of the embryos were viable. On two separate occasions, attempts were made to implant one of the embryos into a surrogate's uterus. Both attempts were unsuccessful.

In November 2013, Vergara and Loeb signed another contract with ART in California to undergo another round of IVF. On November 16, 2013, Vergara and Loeb met with staff at ART and signed a "General Informed Consent for Procedures Involved in In Vitro Fertilization," which included the "Directive for Partners Regarding the Storage and Disposition of CryoPreserved Materials Which May Include Embryos" (the "Form Directive"). The Form Directive requires both parties to consent to uterine transfer of the embryos.

The November 2013 IVF procedure resulted in several embryos. However, genetic testing of the embryos revealed that only two were viable. Because Loeb and Vergara had not chosen another surrogate, the two viable female embryos were cryopreserved at ART in California. Loeb named these embryos "Emma" and "Isabella." Loeb and Vergara ended their relationship in May 2014. The embryos remain cryopreserved at ART is California.

In August 2014, Loeb sued Vergara and ART in California state court seeking an order allowing Loeb to try to bring the embryos to term without Vergara's consent. Loeb alleged that

venue was proper in California because the acts and omissions giving rise to the case occurred in California.

On November 30, 2016, Loeb created the Louisiana Trust. On December 5, 2016, Loeb modified the Louisiana Trust to benefit "Emma" and "Isabella" if they are born alive and called it the "Emma and Isabella Louisiana Trust No. 1." James Charbonnet, a Louisiana lawyer, was named as the trustee.

On December 6, 2016, Loeb dismissed the California case. On December 7, 2016, Loeb directed that a suit alleging various contract claims against Vergara be filed by Charbonnet on behalf of the Trust and "Emma" and "Isabella" in the 24th Judicial District Court, Parish of Jefferson, State of Louisiana. Vergara removed the suit titled [<u>Human Embryo #4 HB-A, by and through Emma and Isabella Louisiana Trust No. 1, Human Embryo #3 HB-A, by and through Emma and Isabella Louisiana Trust, No. 1, Emma and Isabella Louisiana Trust No. 1, and James Charbonnet, in his capacity as Trustee of Emma and Isabella Louisiana Trust No. 1, and James Charbonnet, in his capacity as Trustee of Emma and Isabella Louisiana Trust No. 1 v. Sofia Vergara</u>, C/A No. 17-1498 "S"(1)], to the United States District Court for the Eastern District of Louisiana. Vergara alleged that this court had diversity and federal question subject matter jurisdiction.

Vergara filed a motion to dismiss arguing that she was not subject to personal jurisdiction in Louisiana, this was a court of improper venue, and plaintiffs failed to join ART, which she argued was an indispensable party. Plaintiffs filed a motion to remand, arguing that this court lacked either type of subject matter jurisdiction.

On August 25, 2017, this court held that Vergara was not subject to personal jurisdiction in Louisiana for the claims stated in the litigation. The court chose to address the personal

jurisdiction issue first because it was straightforward, whereas the subject matter jurisdiction issue raised novel questions regarding the citizenship of the embryos, the monetary value of the rights asserted in the case, and the constitutionality of Louisiana laws pertaining to IVF created embryos. Plaintiffs did not appeal.

Loeb claims that he moved to Plaquemine Parish, Louisiana in December 2017, and became a Louisiana resident, thereby entitling him to file a custody suit against Vergara under the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), La. Rev. Stat. § 13:801, *et seq.*

On January 9, 2018, Loeb, on behalf of himself and Human Embryo #3 HB-A and Human Embryo #4 HB-A, filed the instant suit against Vergara in the 25th Judicial District Court, Parish of Plaquemine, State of Louisiana invoking the UCCJEA, and seeking full custody of the embryos. Plaintiffs allege the embryos are living children of whom Loeb should be granted full custody because Vergara is violating her "high duty of care and prudent administration" owed to them by refusing to allow them to have the chance to be born. Plaintiffs also alleged in the original complaint that Vergara is violating the embryos' rights to be free from slavery and right to equal protection under the law as guaranteed by the Thirteenth and Fourteenth Amendments to the Constitution of the United States, respectively.

Vergara removed this action to the United States District Court for the Eastern District of Louisiana alleging diversity and federal question subject matter jurisdiction. She filed a motion to dismiss pursuant to Rule 12(b) of the Federal Rules of Civil Procedure arguing that plaintiffs cannot state a cause of action under the UCCJEA; that she is not subject to personal jurisdiction in Louisiana because nothing has changed since this court's previous ruling on that issue; this is a

4

court of improper venue; and, plaintiffs failed to join ART, which she argues is an indispensable party.

Vergara's primary argument is that plaintiffs cannot state a claim under the UCCJEA because the Act pertains to living children, not IVF created embryos.[1] Vergara points to numerous

---

[1] The UCCJEA provides, in pertinent part:

> (A) Except as otherwise provided in R.S. 13:1816, a court of this state has jurisdiction to make an initial child custody determination only if:
>
> > (1) This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state, or had been the child's home state within twelve months before commencement of the proceeding and the child is absent from the state because he was required to leave or was evacuated due to an emergency or disaster declared under the provisions of R.S. 29:721 et seq., or declared by federal authority, and for an unforeseen reason resulting from the effects of such emergency or disaster was unable to return to this state for an extended period of time.
> >
> > (2) A court of another state does not have jurisdiction or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under R.S. 13:1819 or 1820; and
> >
> > > (a) The child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence.
> > >
> > > (b) Substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships.
> >
> > (3) All courts having jurisdiction have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under R.S. 13:1819 or 1820; or
> >
> > (4) No court of any other state would have jurisdiction under the criteria specified in Paragraph (1), (2), or (3) of this Subsection.
>
> B. Subsection A of this Section is the exclusive jurisdictional basis for making a child custody determination by a court of this state.
>
> C. Physical presence of, or personal jurisdiction over, a party or a child is not necessary or sufficient to make a child custody determination.

La. Rev. Stat. § 13:1813.

places where the UCCJEA refers to living children. Vergara argues that it would be unconstitutional to apply the Louisiana laws regarding IVF created embryos to the UCCJEA to award custody to Loeb against her will because it would infringe on her rights regarding privacy and procreation.[2]

Plaintiffs argue that they have stated a cause of action under UCCJEA, and that a Louisiana court is the only possible forum for that claim. The hierarchical jurisdiction provision of the UCCJEA state that Louisiana has jurisdiction over a UCCJEA claim if no court of any other state would have jurisdiction under the statue's other jurisdiction provisions, which speak to the home state of the child and other courts declining jurisdiction on the ground that a Louisiana court is the more appropriate forum to determine the custody of the child. La. Rev. Stat. § 13:1813(A). Although the embryos were created and are stored in California, plaintiffs contend that a California court would not assume jurisdiction to allocate custody of the embryos because California law views them as property. Plaintiffs argue that Louisiana views the embryos as people, and because no other state would have jurisdiction under to the UCCJEA, a Louisiana court could assume jurisdiction pursuant to La. Rev. Stat. § 13:1813(a)(4), and apply the UCCJEA to award custody to Loeb, the person is acting in the embryos' best interest to give them a chance to be born.

---

[2]  Louisiana has unique laws pertaining to IVF created embryos, which are defined as "in vitro human ov[a], with certain rights granted by law, composed of one or more living human cells and human genetic material so unified and organized that it will develop in utero into an unborn child." La. Rev. Stat. § 9:121. An in vitro fertilized human ovum is considered to be "a juridical person until such time as the in vitro fertilized ovum is implanted in the womb; or at any other time when rights attach to an unborn child in accordance with law[,]" and it has the capacity to sue or be sued. Id. at §§ 9:123 & 9:124. Further, Louisiana law provides that "[a]n in vitro fertilized human ovum is a biological human being which is not the property of the . . . donors of the sperm or ovum[,]" and "[i]f the in vitro fertilization patients express their identity, then their rights as parents as provided under the Louisiana Civil Code will be preserved." Id. at § 9:126. The in vitro fertilization patients cannot own the in vitro fertilization human ovum, which is a juridical person to whom they owe "a high duty of care and prudent administration." Id. at § 9:127. "[T]he best interest of the in vitro fertilized ovum" is the judicial standard used for resolving any disputes arising between any parties regarding the in vitro fertilized ovum. Id. § 9:131.

Plaintiffs contend that personal jurisdiction over Vergara is not necessary for a UCCJEA claim, a Louisiana court is the proper venue under the provisions of the UCCJEA, and ART is not an indispensable party to this custody action.

Plaintiffs filed a motion to remand arguing that this court lacks subject matter jurisdiction over this case because it is a custody dispute that is beyond the purview of the federal district court. After removal, plaintiffs filed an amended complaint that eliminated the Thirteenth and Fourteenth Amendment claims, and raises only the UCCJEA claim.[3] Plaintiffs argue that this court lacks federal question subject matter jurisdiction because the federally guaranteed rights regarding privacy and procreation that Vergara cites are not implicated. Plaintiffs argue that Roe v. Wade, 93 S.Ct. 705 (1973), and its progeny are about a woman's right to terminate a pregnancy before viability and are not applicable to this suit which involves IVF created embryos that are living outside of the womb by medically assisted means. Plaintiffs also argue that Vergara's rights regarding procreation are not implicated because she exercised her right to procreate by engaging in the IVF procedure. Instead, plaintiffs argue that the rights at stake belong to the embryos and that states are able to determine when life begins and how that pertains to the custody of IVF created embryos. Vergara argues that this court has federal question subject matter jurisdiction

---

[3] Vergara filed a Motion to Dismiss First Amended Complaint for Failure to State a Claim upon which Relief can be Granted, Lack of Personal Jurisdiction, Improper Venue, and Failure to Join an Indispensable Party (Doc. #30). Vergara argues that plaintiffs' amended complaint should be dismissed for the same reasons that the original complaint should be dismissed. Although the amended compliant superseded the original complaint, Vergara's arguments in both motions to dismiss pertain to alleged defects common to both complaints. Thus, the court will consider the original motion to dismiss and the second motion to dismiss as being addressed to the amended complaint. 6 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1476 (3d ed.) ("If some defects raised in the original motion remain in the new pleading, the court simply may consider the motion as being addressed to the amended pleading."). However, because this court finds that remanding this matter to the 25th Judicial District Court, Parish of Plaquemines, State of Louisiana is appropriate, Vergara's Motions to Dismiss the Complaint and Amended Complaint (Docs. #5 & 30) are DISMISSED as moot.

7

because her rights regarding privacy and procreation are necessarily implicated in the resolution of the UCCJEA claim.

## ANALYSIS

### I. Order of Deciding Personal and Subject Matter Jurisdiction Questions

Jurisdiction is the bedrock of a federal court's authority to adjudicate the merits of a controversy. Ruhrgas AG v. Marathon Oil Co., 119 S.Ct. 1563, 1566 (1999). For a court's decision to be binding, it must have "authority over the category of claim in suit (subject-matter jurisdiction) and authority over the parties (personal jurisdiction)." Id. The Supreme Court of the United States has held that "there is no unyielding jurisdictional hierarchy[,]" and courts have discretion in which order to determine questions of personal or subject matter jurisdiction. Id. at 1567. Ordinarily, subject matter jurisdiction will not involve an arduous inquiry, and the court should resolve it first considering "expedition and sensitivity to state courts' coequal stature." Id. at 1572. However, if a challenge to the court's subject matter jurisdiction is not easily resolved because raises a difficult and novel question, and the personal jurisdiction issue is straightforward "presenting no complex question of state law," the court should consider personal jurisdiction first. Id. The United States Court of Appeals for the Fifth Circuit has interpreted Ruhrgas to direct

> courts facing multiple grounds for dismissal to consider the complexity of subject-matter jurisdiction issues raised by the case, as well as concerns of federalism, and of judicial economy and restraint in determining whether to dismiss claims due to lack of personal jurisdiction before considering challenges to its subject-matter jurisdiction.

Alpine View Co. Ltd. v. Atlas Copco AB, 205 F.3d 208, 213 (5th Cir. 2000).

In this case, Vergara seeks dismissal of plaintiffs' UCCJEA claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. Vergara then argues that, because plaintiffs' cannot state a UCCJEA claim, this case must be

dismissed pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure for lack personal jurisdiction over her. Plaintiffs argue that this court does not have subject matter jurisdiction over their UCCJEA claim, and thus cannot dismiss it. Because a court must have subject matter jurisdiction in order to adjudicate the merits of a claim, the court must first consider plaintiffs' motion to remand. See Ruhrgas, 119 S.Ct. at 1566. The subject matter jurisdiction inquiry in this matter can be determined without considering novel issues such as the citizenship of embryos, the value of the rights asserted, or the constitutionality of the Louisiana statutes pertaining to IVF created embryos.

## II.     Plaintiffs' Motion to Remand (Doc. #12)

Plaintiffs argue that this matter should be remanded to the 25th Judicial District Court, Parish of Plaquemines, State of Louisiana because this court lacks diversity and federal question subject matter jurisdiction.

### A.     Remand Standard

Motions to remand to state court are governed by 28 U.S.C. § 1447(c), which provides that "[i]f at any time before the final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." The removing defendant bears the burden of demonstrating that federal jurisdiction exists and therefore that removal was proper. Jernigan v. Ashland Oil, Inc., 989 F.2d 812, 815 (5th Cir. 1993).

In assessing whether removal is appropriate, the court is guided by the principle, grounded in notions of comity and the recognition that federal courts are courts of limited jurisdiction, that removal statutes should be strictly construed. See Manguno v. Prudential Prop. & Cas. Ins. Co., 276 F.3d 720, 723 (5th Cir. 2002). Doubts regarding whether federal jurisdiction is proper should be resolved against federal jurisdiction. Acuna v. Brown & Root, 200 F.3d 335, 339 (5th Cir.

2000). The removing defendant bears the burden of demonstrating that federal jurisdiction exists and therefore that removal was proper. Jernigan, 989 F.2d at 815.

### B.     Diversity Subject Matter Jurisdiction

Vergara alleges that this court has diversity subject matter jurisdiction under 28 U.S.C. § 1332(a)(1), which provides that federal district courts have original jurisdiction over civil actions where the amount in controversy exceeds $75,000, exclusive of interest and costs, and are between citizens of different States. Plaintiffs argue that this court does not have diversity subject matter jurisdiction because this is a domestic relations case.

The Supreme Court of the United States has held that federal courts lack diversity subject matter jurisdiction over domestic relations cases. Ankenbrant v. Richards, 112 S.Ct. 2206, 2215 (1992). The Court stated that state courts are better suited to monitor compliance with decrees regarding divorce, alimony and child custody because they have a "close association with state and local government organizations dedicated to handling the issues" arising therefrom. Id. Further, "as a matter of judicial expertise, it makes far more sense to retain the rule that federal courts lack power to issue these types of decrees because of the special proficiency developed by state tribunals . . . in handling issues that arise" in domestic relations cases. Id. Applying the domestic relations exception to jurisdiction, the United States Court of Appeals for the Fifth Circuit has held that a "district court lacked subject matter jurisdiction over the question of the custody of the child [because] domestic relations are the province of state courts, going back to *Ex parte* Burrus, 136 U.S. 586, 593-94, 10 S.Ct. 850, 853, 34 L.Ed. 500 (1890)." Franks v. Smith, 717 F.2d 183, 185 (5th Cir. 1983). Moreover, the UCCJEA "does not create any federal right of action, as it is a state procedural act." Becker v. State of Cal., 17 F.3d 393, 1994 WL 41073, at *1 (9th Cir. 1994).

Plaintiffs' complaint clearly seeks a custody determination by invoking the UCCJEA. As a result, the domestic relations exception applies, and this court lacks diversity subject matter jurisdiction over plaintiffs' custody claim.

### C. Federal Question Subject Matter Jurisdiction

Vergara argues that this court has federal question subject matter jurisdiction over this matter because plaintiffs' alleged in the original complaint claims under the Thirteenth and Fourteenth Amendments, and the resolution of plaintiffs' UCCJEA claim (1) "necessarily depends on the resolution of substantial questions of federal law, and (2) federal law preempts Louisiana's purported definition of the pre-embryos." See Doc. #20. Vergara is essentially arguing that in order for plaintiffs to state a custody claim under the UCCJEA, a court needs to find that the embryos are people rather than property, which implicates rights regarding privacy and procreation that arise under the Constitution of the United States of America. Vergara argues that the UCCJEA cannot apply because the embryos are not people, and the Louisiana laws pertaining to IVF created embryos are unconstitutional.

Plaintiffs argue that Vergara's constitutional rights are not necessarily implicated in resolving the UCCJEA claim. Plaintiffs contend that Vergara exercised her constitutional right to procreate by consensually engaging in the IVF procedure that led to the creation of the embryos. Plaintiffs contend that the embryos' right to life is paramount, and within the province of state law regarding IVF created embryos. Plaintiffs argue that the State of Louisiana should be afforded the opportunity to decide whether the UCCJEA can apply to IVF created embryos, and if it does, whether it can apply to IVF created embryos that were created and are stored in another state. Plaintiffs contend that the application of state law should be determined as a matter of first impression by the Louisiana state courts.

Under 28 U.S.C. § 1331, the federal district court "shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Pursuant to the well-pleaded complaint rule, "[a] federal question exists only [in] those cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." Singh v. Duane Morris LLP, 538 F.3d 334, 337–38 (5th Cir. 2008) (quotations omitted). "'[G]enerally, there is no federal jurisdiction if the plaintiff properly pleads only a state law cause of action.'" Gutierrez v. Flores, 543 F.3d 248, 252 (5th Cir. 2008) (quoting Bernhard v. Whitney Nat'l Bank, 523 F.3d 546, 551 (5th Cir. 2008)). The well-pleaded complaint rule "makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." Caterpillar Inc. v. Williams, 107 S.Ct. 2425, 2429 (1987).

The existence of removal jurisdiction is determined at the time of removal. Cavallini v. State Farm Mutual Auto Ins. Co., 44 F.3d 256, 264-65 (5th Cir. 1995). In their original complaint, plaintiffs alleged claims under the Thirteenth and Fourteenth Amendments, which conferred federal question subject matter jurisdiction on this court, making the case removable. See In re Carter, 618 F.2d 1093, 1101 (5th Cir. 1980) ("It is a fundamental principle of law that whether subject matter jurisdiction exists is a question answered by looking to the complaint as it existed at the time the petition for removal was filed.").

After removal, plaintiffs amended their complaint to eliminate the Thirteenth and Fourteenth Amendment claims, leaving pending only plaintiffs' state-law UCCJEA. Due to the elimination of the claims over which this court undoubtedly had federal question subject matter jurisdiction, it would appear that if this court accepted jurisdiction over the case the court would be exercising supplemental jurisdiction over plaintiffs' UCCJEA claim pursuant to 28 U.S.C. §

1367. However, when the complaint is amended to delete the jurisdiction-conferring claims, "the amended complaint supersedes the original complaint, and the case [is] treated as though the plaintiff has pleaded no basis of federal jurisdiction." 13D Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3567.3 (3d ed.). Thus, there is "no jurisdiction-invoking claim to which supplemental jurisdiction can attach, and the court may not retain jurisdiction of the non-federal claims." Id.

Although the UCCJEA, "does not create any federal right of action, as it is a state procedural act[,]" Becker, 17 F.3d 393, 1994 WL 41073, at *1, Vergara argues that plaintiffs' state law UCCJEA claim confers federal question subject matter jurisdiction on this court. Vergara contends that the disposition of plaintiffs' UCCJEA claim depends on the resolution of substantial questions of federal law, and that federal law preempts Louisiana's laws pertaining to IVF created embryos.

Federal question jurisdiction exists if "federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." Singh, 538 F.3d at 337–38 (quotations omitted). "The fact that a substantial federal question is necessary to the resolution of a state-law claim is not sufficient to permit federal jurisdiction[,]" and "the presence of a disputed federal issue . . . [is] never necessarily dispositive." Id. at 338. Instead, the court must make "careful judgments about the exercise of federal judicial power in an area of uncertain jurisdiction." Id. To that end, "federal question jurisdiction exists where (1) resolving a federal issue is necessary to resolution of the state-law claim; (2) the federal issue is actually disputed; (3) the federal issue is substantial; and (4) federal jurisdiction will not disturb the balance of federal and state judicial responsibilities." Id. Federal question jurisdiction also

exists where state law claims are completely preempted by a federal statute in which Congress intended that the federal action be exclusive. Gutierrez v. Flores, 543 F.3d 248, 252 (5th Cir. 2008).

Plaintiffs seek to use the UCCJEA to determine the custody of the IVF created embryos that were created and are kept in California. Vergara argues that resolving plaintiffs' UCCJEA claim would necessarily involve a ruling on the constitutionality of Louisiana's laws regarding IVF created embryos and her constitutional rights regarding privacy and procreation. Plaintiffs argue that the federal rights Vergara cites are not implicated in this case, which they contend involves purely a determination of the application of state law.

Vergara's arguments regarding her constitutional rights and the constitutionality of the Louisiana laws pertaining to IVF created embryos are defenses to the applicability of the UCCJEA. Indeed, these are the very same reasons that she argues that plaintiffs' UCCJEA claim should be dismissed for failure to state a claim under Rule 12(b)(6). Federal question jurisdiction cannot be based on a defense that raises a federal question. Merrell Dow Pharma. Inc. v. Thompson, 106 S.Ct. 3229, 3232 (1986). Further, the resolution of plaintiffs' UCCJEA claim does not necessarily turn on Vergara's constitutional arguments. There is a threshold issue whether Louisiana's laws related to IVF created embryos can be applied to embryos that were not created and are not stored in Louisiana. Resolving that question does not involve the constitutional issues Vergara raises regarding rights to privacy and procreation.

Moreover, complete preemption is inapplicable. Complete preemption is a doctrine of subject matter jurisdiction that "is based on the theory that some federal statutes have such an overwhelming preemptive effect that they do more than merely provide a defense to a state-law claim." 13D Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3566 (3d ed.) Complete preemption is present when "a federal statute 'so forcibly and completely displaces

state law that the plaintiff's cause of action is either wholly federal or nothing at all.'" Hoskins v. Bekins Van Lines, 343 F.3d 769, 773 (5th Cir. 2003) (quoting Carpenter v. Wichita Falls Ind. School Dist., 44 F.3d 362, 366 (5th Cir. 1995)). The Supreme Court of the United States recognizes complete preemption in four areas: the Taft-Hartley Act, the Employee Retirement Income Security Act of 1974 ("ERISA"), certain sections of the National Bank Act and certain Indian tribal claims. 13D Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3566 (3d ed.). This case does not implicate any of those areas of law. Therefore, complete preemption is not applicable.

Because the only remaining claim in this case is a state law custody claim over which federal courts lack jurisdiction, the motion to remand is GRANTED, and this matter is remanded to the 25th Judicial District Court, Parish of Plaquemine, State of Louisiana.

## CONCLUSION

**IT IS HEREBY ORDERED** that Plaintiffs' Motion to Remand (Doc. #12) is **GRANTED**, and this matter is **REMANDED** to the 25th Judicial District Court, Parish of Plaquemines, State of Louisiana.

**IT IS FURTHER ORDERED** that Defendant's Motions to Dismiss the Complaint and Amended Complaint (Docs. #5 & 30) are **DISMISSED** as moot.

New Orleans, Louisiana, this   18th  day of May, 2018.

  _____
  **MARY ANN VIAL LEMMON**
  **UNITED STATES DISTRICT JUDGE**